## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MIDWEST DIVISION-MMC, LLC, d/b/a
MENORAH MEDICAL CENTER,

      Plaintiff,

      v.

CALIFORNIA NURSES' ASSOCIATION,
 d/b/a NNOC-MISSOURI & KANSAS NNU,

      Defendant.

Case No. 20-02372-JAR-TJJ

## MEMORANDUM AND ORDER

Plaintiff Midwest Division-MMC, LLC, doing business as Menorah Medical Center ("MMC"), brings this declaratory judgment action against Defendant California Nurses' Association, doing business as NNOC-Missouri & Kansas NNU ("Union"), seeking a declaration that the Union's grievance is not arbitrable and that the Union must withdraw its request for arbitration. This matter is before the Court on the Union's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. 12). The motion is fully briefed and the Court is prepared to rule. For the reasons explained below, the Court grants the motion to dismiss.

## I.      Background

MMC operates a hospital in Overland Park, Kansas, and the Union represents a bargaining unit of Registered Nurses employed by MMC. MMC and the Union entered into a collective bargaining agreement ("Agreement") on October 21, 2018, effective through May 31, 2021. The Agreement was in effect at the time of the grievance giving rise to this dispute.

The Agreement sets forth the grievance and arbitration procedures for resolving certain disputes. Some, but not all disputes are subject to these procedures under the Agreement. Step

one of the grievance procedure requires an authorized union representative to file a written grievance with the manager of the nursing unit.  If the grievance is not resolved in a mutually satisfactory manner, the authorized union representative may proceed to step two by submitting the written grievance to the Chief Nursing Officer.  "If a grievance affects more than one unit or department of [MMC], and relief is unavailable from the immediate supervisor, it may be submitted immediately at Step Two."[1]  If the grievance is not resolved at step two, the Union may advance the grievance to arbitration by submitting a written demand to the Chief Nursing Officer or previously authorized designee and by submitting a request to the Federal Mediation and Conciliation Service ("FMCS") for a panel of arbitrators.  Upon receipt of the list of arbitrators on the panel, "the arbitrator shall be selected by each party alternately striking a name until only one arbitrator remains.  Either party may reject one (1) panel in its entirety."[2]  The parties must flip a coin to determine which party strikes the first name.

Under the Agreement, MMC provides certain benefits to its Registered Nurses, including a 401(k) plan.  Article 5, which governs those benefits, addresses termination or amendment of 401(k) plans.  In pertinent part, Article 5 provides:

> [MMC] may amend or terminate any of the plans referred to in this Article, subject to the conditions below.  No termination or amendment of a plan or any issues relating to administration or application of such plans, shall be subject to the grievance and arbitration provisions of this Agreement.  If [MMC] intends to change a plan . . . in a way that will result in a substantial decrease to any particular plan for bargaining unit Registered Nurses, management will give the Union six (6) months' advance notice and will, upon request, engage in effects bargaining with the Union for no more than sixty (60) days.  [MMC] will consider seriously any recommendations the Union may choose to make with respect to the intended change, but may implement the change after the expiration of the six (6) months.[3]

---

[1] Doc. 1-1 at 12.

[2] *Id.* at 2.

[3] *Id.* at 4.

On June 19, 2020, the Union filed a grievance alleging that MMC "unilaterally made changes to the 401(k) in a manner that was discriminatory to the bargaining unit members [and] in violation of the contract."[4]  The Union requested that MMC "[r]estore 401(k) contribution to previous level [sic]."[5]  The following month, the Union submitted an arbitration request and requested a panel of arbitrators from the FMCS.  On July 21, 2020, MMC sent the Union a letter refusing its arbitration request.  The letter argued that the grievance is neither grievable nor arbitrable and asked the Union to immediately withdraw the grievance with prejudice and to withdraw its request for a panel of arbitrators.

Less than two weeks later, MMC filed this action, requesting that the Court enter a declaratory judgment that the Union's grievance is not arbitrable and directing the Union to withdraw its demand for arbitration and request for a panel of arbitrators.  The Union filed a motion to dismiss for lack of subject matter jurisdiction, arguing that MMC lacks standing to bring this declaratory judgment action because it suffers no injury in fact.

Shortly thereafter, in an email dated September 21, 2020, MMC announced that it would not amend the Registered Nurses' 401(k) plan after all.[6]  The Union has withdrawn the grievance with prejudice and withdrawn its request for a panel of arbitrators from FMCS.  In light of these recent developments, the Union argues that, even if MMC has standing, "the matter is now entirely moot."[7]

---

[4] Doc. 1-2.

[5] *Id.*

[6] Doc. 15-1.

[7] Doc. 15 at 7.

## II.      Rule 12(b)(1) Standard

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  Federal courts are courts of limited jurisdiction and, as such, there is a strong presumption against federal jurisdiction.[8]  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."[9]  The burden of establishing a federal court's subject matter jurisdiction falls on the plaintiff.[10]  Mere conclusory allegations of jurisdiction are insufficient.[11]

Under Rule 12(b)(1), dismissal for lack of subject matter jurisdiction comes in two forms: facial attacks and factual attacks.  A facial attack challenges the sufficiency of the complaint.  "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[12]  Here, Defendant presents a facial attack on the Complaint, to which several exhibits are attached.  The Court therefore considers whether the allegations in the Complaint, if accepted as true, establish jurisdiction.

## III.      Discussion

The Declaratory Judgment Act provides in pertinent part that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

---

[8] *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991); *see also United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1." (internal citations omitted)).

[9] *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1152 (10th Cir. 2015) (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

[10] *Id.* at 1151.

[11] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[12] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

seeking such declaration, whether or not further relief is or could be sought."[13]  "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."[14]

An "actual controversy" exists only when the parties "ha[ve] taken adverse positions with respect to their existing obligations."[15]  Thus, the controversy must be "'definite and concrete, touching the legal relations of parties having adverse legal interests,' must be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"[16]  Even where a court faces a justiciable Article III case or controversy, however, the Act gives federal courts broad discretion to declare the rights of the litigants.[17]

## A.      Standing

One of the doctrines reflecting Article III's case-or-controversy limitation on jurisdictional power is the doctrine of standing.  That doctrine requires that a plaintiff invoking federal jurisdiction establish the "irreducible constitutional minimum" of standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result of the independent action of some third party not before the court."

---

[13] 28 U.S.C. § 2201(a).

[14] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)); *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) ("[A] declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement.").

[15] *Aetna Life Ins. Co.*, 300 U.S. at 242; *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1385 (10th Cir. 2011).

[16] *Surefoot*, 531 F.3d at 1244 (quoting *MedImmune*, 549 U.S. at 127).

[17] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Surefoot*, 531 F.3d at 1240 ("[E]ven where a constitutionally cognizable controversy exists, the Act stipulates only that district courts 'may'—not 'must'—make a declaration on the merits of that controversy . . . .").

Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[18]

The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing each element of standing "with the manner and degree of evidence required at the successive stages of the litigation."[19]  Standing is evaluated based on the facts as they exist at the time the complaint is filed.[20]  At the pleading stage, the Court "presum[es] that general allegations embrace those specific facts that are necessary to support the claim,"[21] and "general factual allegations of injury resulting from the defendant's conduct may suffice."[22]  Nonetheless, the Court is "not bound by conclusory allegations, unwarranted inferences, or legal conclusions."[23]

The parties dispute whether MMC suffers an "injury in fact."  MMC's Complaint alleges that "[t]he Union's conduct . . . would result in harm to MMC by requiring it to arbitrate a claim" it has not agreed to arbitrate.[24]  The Union, however, contends that MMC "did not" and "cannot suffer any harm as a result of the Union filing a grievance and requesting a panel of arbitrators from FMCS" because neither "force MMC to arbitrate the matter."[25]  The Union agrees that the dispute is not subject to the grievance and arbitration procedures set forth in the Agreement but states that "this does not in any manner prohibit MMC and the Union from mutually agreeing to submit a dispute to arbitration . . . rather than potentially having to resolve a dispute by a lawsuit

---

[18] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in original) (internal citations omitted).

[19] *Id.* at 561; *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

[20] *Tandy*, 380 F.3d at 1284.

[21] *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

[22] *Id.*

[23] *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (citations omitted).

[24] Doc. 1 at 4.

[25] Doc. 13 at 4, 5 n.1.

over breach of contract or by an unfair labor practice charge."[26]  MMC responds that the Union's "refusal" to withdraw the grievance and its request for a panel of arbitrators "continues to result in harm" in the form of "attorney's fees, costs, disruption of the stability and certainty necessary in labor relations, and the fact that the Union (having refused to withdraw its demand) could unilaterally seek to strike a panel or move to compel arbitration."[27]

As an initial matter, the Supreme Court has made clear that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[28]  And "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination."[29]  Accordingly, courts readily determine the question of arbitrability in a declaratory judgment action where the parties dispute whether an obligation to arbitrate exists under a contract.[30]  Although MMC seeks a declaration on the question of arbitrability, no disagreement appears to exist between the parties about whether the Agreement creates an obligation to arbitrate the dispute at issue—MMC and the Union agree that it does not. In this respect, the parties have taken no "adverse positions with respect to their existing

---

[26] *Id.* at 5.

[27] Doc. 14 at 4.

[28] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

[29] *Id.* at 649.

[30] *See, e.g.*, *Bridgestone/Firestone, Inc. v. Local Union No. 998*, 4 F.3d 918, 920 (10th Cir. 1993) (affirming the district court's decision on the question of arbitrability where the union alleged that an employee's complaint was subject to arbitration and the employer alleged that it was not); *Local 5-857 Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Conoco, Inc.*, 320 F.3d 1123, 1125 (10th Cir. 2003) (affirming the district court's decision on the question of arbitrability where the union sought to compel arbitration of three grievances and the employer moved for summary judgment, arguing they were not arbitrable); *Suncor Energy (U.S.A.), Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 474 F. App'x 729 (10th Cir. 2012) (unpublished) (affirming the district court's decision on whether a grievance was subject to arbitration where the employer sought a declaratory judgment that it was not and the union filed a cross-complaint requesting the court find that it was).

obligations"[31]—that is, the obligation to arbitrate the dispute—and there is no "actual controversy" for this Court to resolve.[32]

Moreover, to establish injury in fact, a plaintiff must allege an injury that is both "concrete and particularized" and "actual or imminent"—not remote, speculative, conjectural, or hypothetical.[33]  The Supreme Court has repeatedly reiterated that "[a]llegations of possible future injury do not satisfy the requirements of Art[icle] III.  Thus, a threatened injury must be certainly impending to constitute injury in fact."[34]

Here, MMC alleges an injury that is too speculative to confer standing.  The main injury MMC alleges is that the Union may require MMC to arbitrate a dispute it has no duty to arbitrate by (1) moving to compel arbitration and (2) unilaterally striking a panel of arbitrators.  First, not only has the Union never suggested that it would move to compel arbitration,[35] but there is also no concrete possibility that the Union will so move given its position that it has no right to arbitration under the Agreement.  Second, no arbitrator has been selected and no arbitration hearing has been scheduled.[36]  MMC speculates that the Union may exercise its right to reject

---

[31] *Aetna Life Ins. Co.*, 300 U.S. at 242; *Columbian Fin. Corp.*, 650 F.3d at 1385 ("[T]o repeat what the Supreme Court said in *Aetna*, an actual controversy exists only when the parties 'ha[ve] taken adverse positions with respect to their existing obligations.'" (quoting *Aetna Life Ins. Co.*, 300 U.S. at 242)).

[32] *Cf. Am. Auto. Ins. Co. v. Marlow*, 666 F. Supp. 2d 1209, 1214 (D. Colo. 2009) (denying the defendants' motion to dismiss arguing there was no "actual controversy" because the defendants did not dispute that the defendants' claims were not covered under an insurance policy in light of the defendants' "more recent filing" disputing whether the claims were, in fact, covered, creating a justiciable controversy).

[33] *Lujan*, 504 U.S. at 560; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

[34] *Whitmore*, 495 U.S. at 158 (internal quotation marks and citation omitted); *Clapper*, 568 U.S. at 409.

[35] *See, e.g.*, *Posern v. Prudential Sec., Inc.*, No. C-03-0507SC, 2004 WL 771399, at *8 (N.D. Cal. Feb. 18, 2004) (dismissing a claim for a declaratory judgment invalidating an arbitration provision where the defendant "has not filed a motion to compel arbitration," and therefore "the declaratory relief that [the plaintiffs] seek[] appears speculative").

[36] *Cf. Gruntal & Co. v. Steinberg*, 854 F. Supp. 324, 333 (D.N.J.) (finding a "concrete possibility the [arbitration] panel will compel [the plaintiff] to arbitrate in the absence of a judicial determination as to arbitrability" because the arbitration proceedings were pending before the arbitration panel and, "[m]ore importantly, the issue of the arbitrability of the dispute [was] before the [] arbitration panel"), *aff'd*, 46 F.3d 1116 (3d Cir. 1994).

one panel in its entirety.  Even if it does, however, the Union's panel rejection would not conclude the arbitrator selection process and allow an arbitration hearing to proceed.  An arbitrator must still be selected.  And, as the Union observes, the Agreement provides for an arbitrator selection process that is collaborative—the arbitrator "shall be selected by each party alternately striking a name until only one arbitrator remains,"[37] and the parties must flip a coin to determine who strikes the first name.  Thus, the possibility that MMC will be required to arbitrate the dispute is too conjectural and speculative to satisfy the injury in fact requirement.

Third, to the extent MMC alleges that the Union's failure to withdraw the grievance and the request for a panel of arbitrators indicates that the Union will seek to require MMC to arbitrate this dispute, its allegation is also speculative.  In its response opposing the Union's motion to dismiss, MMC characterizes the Union's failure to withdraw the grievance and its request for a panel of arbitrators as an affirmative refusal.  The Court need not decide whether such an affirmative refusal creates a concrete possibility that the Union may seek to compel arbitration because this characterization of the Union's conduct is not supported by the allegations in the Complaint.  As the Union points out, the Complaint never alleges that the Union's failure to withdraw the grievance and the request for a panel of arbitrators amounted to an outright refusal; it avers only that the Union had not—within the ten-day period between MMC's letter refusing arbitration and the date of the Complaint—withdrawn the grievance or the request for a panel of arbitrators.  Moreover, MMC's assertion that the Union will seek to compel arbitration is premature.[38]

---

[37] Doc. 1-1 at 2.

[38] The doctrine of standing is closely tied to another justiciability issue—ripeness.  The ripeness doctrine asks "whether there is sufficient 'hardship to the parties [in] withholding court consideration' until there is enforcement action."  *MedImmune*, 549 U.S. at 128 n.8 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)).  The issues of Article III standing and ripeness "boil down to the same question" in this case.  *Id.*  The

Finally, MMC alleges no facts indicating that the Union's conduct has caused a disruption of labor relations.  Nor does MMC show that any such disruption is traceable to the Union's grievance or request for a panel of arbitrators, rather than, for instance, the result of MMC's unilateral decision to amend the Registered Nurses' 401(k) plan.  Thus, MMC fails to show the irreducible constitutional minimum of Article III standing.

### B.      Mootness

If events subsequent to the filing of the case resolve the dispute, the federal court must dismiss it as moot.[39]  "In deciding whether a case is moot, '[t]he crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world.'"[40]  In other words, "a case becomes moot 'when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision.'"[41]  Declaratory judgment actions "must comport with the same mootness principles as any other suit."[42]

Even if a justiciable Article III case or controversy existed when MMC initially filed this action, the case is now moot.  On September 21, 2020, MMC announced that it would not amend the Registered Nurses' 401(k) benefits as planned in recognition of the nurses' hard work and dedication to MMC's mission.  The Union has since withdrawn the grievance with prejudice and

---

Court considers this question in the context of standing throughout this opinion.  *Accord Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014).

[39] *Unified Sch. Dist. No. 259 v. Disability Rights Ctr.*, 491 F.3d 1143, 1147 (10th Cir. 2007) ("Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies." (quoting *Seneca-Cayuga Tribe v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1028 (10th Cir. 2003))).

[40] *Kan. Jud. Rev. v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009) (alteration in original) (quoting *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)).

[41] *Ghailani v. Sessions*, 859 F.3d 1295, 1301 (10th Cir. 2017) (quoting *Indiana v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015)).

[42] *Prier v. Steed*, 456 F.3d 1209, 1213 (10th Cir. 2006).

withdrawn its request for a panel of arbitrators from FMCS.[43]  Thus, any dispute between the parties has been resolved.  "[T]he actual controversy must exist not only at the time that the complaint is filed; it must continue until the district court issues its declaratory judgment."[44] Under these circumstances, any declaratory judgment issued by this Court would have no real-world consequences on the behavior of the parties.  The Court would do no more than supply "an advisory opinion about a hypothetical dispute" if it were to declare the arbitrability of this class of disputes.[45]

MMC argues that the withdrawal of the grievance with prejudice and the withdrawal of the request for a panel of arbitrators does not moot the case.  MMC does not state which exception to the mootness doctrine applies, but instead cites *Post Tribune Publishing, Inc. v. American Arbitration Ass'n*,[46] in which the Northern District of Indiana applied the "voluntary cessation" exception to the mootness doctrine and determined that the union's voluntary withdrawal of its demand for arbitration pending the outcome of the case did not moot the question of arbitrability before the court.[47]

Under the voluntary cessation exception, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."[48]  The exception "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then

---

[43] *See United Gov't Sec. Officers of Am., Int'l Union v. Akal Sec., Inc.*, No. 09-0025, 2009 WL 10701206, at *3 (D.N.M. July 22, 2009) ("[S]ince Plaintiff no longer wishes to pursue Ms. Michaels' demand for arbitration, and because none is pending, a declaration on the arbitrability of this class of disputes would be purely advisory.").

[44] *Columbian Fin. Corp.*, 650 F.3d at 1381.

[45] *Surefoot*, 531 F.3d at 1242.

[46] 767 F. Supp. 935 (N.D. Ind. 1991).

[47] *Id.* at 941.

[48] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019).

resuming the illegal conduct."[49]   However, a court may nonetheless conclude that voluntary cessation has rendered a case moot if "there is no reasonable expectation that the alleged violation will recur" and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."[50]   Moreover, "[v]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction."[51]   The party asserting mootness bears the "heavy burden" of demonstrating "that there is no reasonable expectation that the wrong will be repeated."[52]

In *Post Tribune*, the Northern District of Indiana determined that the voluntary cessation exception applied because the union only withdrew its arbitration demand after the company had moved for summary judgment, and the court found it "very plausible" that the union would reassert its demand for arbitration.[53]   Further, the union failed to show that the withdrawal "completely and irrevocably eradicated the effects of the [u]nion's pursuit of arbitration."[54]

MMC's reliance on *Post Tribune* is misplaced.   Here, the Union has withdrawn its grievance with prejudice.   And, importantly, the underlying dispute itself has been resolved— MMC has decided not to implement any changes to the Registered Nurses' 401(k) plan.[55]   Under

---

[49] *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1214 (10th Cir. 2015) (quoting *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008)).

[50] *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 501 F.3d 1096, 1115 (10th Cir. 2010) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

[51] *Ind*, 801 F.3d at 1214 (alteration in original) (quoting *Rio Grande Silvery Minnow*, 501 F.3d at 1115).

[52] *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

[53] *Post Tribune*, 767 F. Supp. at 941.

[54] *Id.*

[55] Indeed, cases in the arbitrability context finding the voluntary cessation exception applicable typically involve situations in which the underlying dispute that gave rise to the arbitration demand has not been resolved, and there is therefore a reasonable chance that the defendant could resume the allegedly improper behavior—demanding arbitration—at any time. *See, e.g.*, *Massa Constr. Inc. v. Empire State Carpenters Fringe Benefits Funds*, No. 12-6405, 2013 WL 4780957, at *5 (E.D.N.Y. Sept. 4, 2013) (finding that the labor organization's voluntary cessation of its arbitration demand did not moot the case because "no subsequent events ha[d] made it absolutely clear" that it would "cease all demands for arbitration," noting the labor organization "would have full ability to renew its demand for arbitration" if it so desired (internal quotation marks and citation omitted)); *JP Morgan Chase Bank,*

these circumstances, there is no reason to believe the Union will continue to press for arbitration, and any such claim is based on pure speculation.  Moreover, MMC does not allege that the Union's conduct "continue[s] to have any residual effect."[56]  And there is no indication that the Union made the withdrawals simply to deprive the Court of jurisdiction.  The voluntary cessation exception therefore does not apply.  Accordingly, even if a justiciable Article III case or controversy existed at the time of filing, the Court finds this case moot.

**IT IS THEREFORE ORDERED BY THE COURT** that the Union's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. 12) is **granted**.  This case is hereby dismissed in its entirety without prejudice.

**IT IS SO ORDERED.**

Dated: October 22, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

*N.A. v. Jones*, No. C15-1176RAJ, 2016 WL 1182153, at *10 (W.D. Wash. Mar. 28, 2016) ("The [a]ction is not moot . . . [because the defendants] are still pursuing the same claims against [the plaintiff], albeit in a different forum.").

[56] *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997).